NOT DESIGNATED FOR PUBLICATION

No. 123,044

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHELBY L. MCCAIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed November 23, 2022. Affirmed in part, vacated in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and COBLE, JJ.

PER CURIAM: As part of a plea agreement, Shelby L. McCain pled guilty to felony theft. The parties agreed to, and the district court granted, a 60-month term of probation, despite that the statutorily presumptive sentence was 24 months. The parties also agreed to restitution, with part of the amount determined at a later hearing. On appeal, McCain makes multiple claims. Her first issue persuasively argues the district court imposed an illegal sentence because the district court lacked authority to impose the extended probation term under the statute identified by the district court, K.S.A. 2018 Supp. 21-6608(c)(5). McCain also argues the district court's restitution plan was unworkable, but

she did not object to the plan when the district court imposed it, and this is fatal to her claim. McCain challenges two statutory schemes—the revised Kansas Sentencing Guidelines Act (KSGA) and the restitution statutes—as being unconstitutional. But our Supreme Court has held contrary to McCain's constitutionality challenges and this court is duty-bound to follow Kansas Supreme Court precedent. The district court's imposition of restitution is affirmed, but McCain's probation sentence is vacated, and this case is remanded to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

The State alleged that McCain was falsifying freight contracts at her workplace, which led to her employer, King of Freight, overpaying McCain by $37,031 more in commissions than she had earned. The State charged McCain with one count of unlawful acts concerning computers, in violation of K.S.A. 2018 Supp. 21-5839(a)(2), and one count of felony theft, in violation of K.S.A. 2018 Supp. 21-5801(a)(1).

The parties reached an agreement, and in line with that plea agreement, McCain pled guilty to felony theft and the remaining computer charge was dismissed. Under the plea agreement, the parties agreed to recommend the mid-number sentence in the appropriate sentencing guidelines grid box, but also agreed that probation was presumed. McCain also consented to pay two forms of restitution, including $18,000 to Logistics Dynamics, Inc. Charges related to Logistics Dynamics were not pursued because of the plea agreement and McCain's agreement to pay restitution. She also agreed to pay "legally justifiable restitution to King of Freight," an amount which was to be officially determined at a restitution hearing. The plea agreement stated the State intended to seek $37,031—the amount McCain was overpaid—in restitution to King of Freight. The plea agreement also contemplated that the parties recommend McCain be placed on an extended period of probation of 60 months, under K.S.A. 2018 Supp. 21-6608, to allow her time to make full restitution.

2

The district court held the restitution hearing before sentencing. The general manager of King of Freight testified the company lost $41,671.37 due to McCain's actions. After arguments from counsel, the district court ordered McCain to pay restitution in the amount of $41,671.37 to King of Freight and $18,000 to Logistics Dynamics.

Before establishing a payment plan for restitution, the district court questioned McCain and determined although she was unemployed at the time of the hearing, she anticipated working after receiving a surgical procedure for her eyes. McCain informed the district court that she and her four-year-old daughter lived with McCain's mother, and McCain did not have any bills. The district court also asked about McCain's drug use, which she denied despite two positive tests for methamphetamine.

The district court ultimately found that immediate payment of the restitution in full "would be unreasonable due to the amount," and ordered McCain to pay restitution in 60 installments over her 60-month probation. Although each installment "would normally break down to almost $1,000 a month," the district court found this payment "doesn't seem immediately feasible since [McCain was] not currently working." The district court ordered McCain to secure employment within two months, and pay $500 per month toward restitution, reasoning that she expected to start working, and "for someone with, apparently, no bills, living with their mother, [such payments] should be feasible . . . ."

After determining restitution, the district court sentenced McCain to the recommended 16 months' imprisonment but granted probation "for a term of 60 months, as agreed to in the plea agreement." The district court held McCain's probation period was extended beyond the statutory length based on the agreement of the parties and McCain's welfare because it was "highly unlikely that restitution could be repaid within the statutory probation period." If the 60-month probation period was invalidated, the district court announced an alternative ruling, a "secondary order" of 24 months'

3

probation subject to extension for paying restitution "in the event it was found not to be appropriate to place her on the 60 months" probation.

McCain appeals.

McCain presents multiple issues on appeal. She first claims the district court erred in imposing a 60-month term of probation, creating an illegal sentence. She then argues the district court erred by finding the $500 monthly restitution payments workable. Finally, she makes two constitutional arguments. First, she contends the judicial prior conviction findings that elevated her sentence violated section 5 of the Kansas Constitution Bill of Rights, and she also claims the Kansas criminal restitution scheme is unconstitutional. We address each issue in turn.

*The District Court Erred by Imposing the 60-Month Term of Probation.*

For the first time on appeal, McCain argues the district court imposed an illegal sentence when it extended her probation beyond the statutorily presumptive term. First, she argues the district court erred in extending her probation under K.S.A. 2018 Supp. 21-6608(c)(5) because that statutory provision is inapplicable based on the severity level of her crime of conviction. Second, while acknowledging the district court could have jurisdiction to extend her probation term pursuant to a different statutory provision— K.S.A. 2018 Supp. 21-6608(c)(1)(B)—McCain argues that her extended probation term was an "upward durational departure" that violated her jury trial rights under *Apprendi v. New Jersey*, 530 U.S. 466, 475-76, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Put simply, McCain claims she was sentenced illegally based on both statutory and constitutional grounds.

4

In response, the State argues McCain did not preserve this claim for appellate review and she waived her right to challenge her sentence on appeal. But if we consider McCain's claim, the State alternatively argues this court is duty-bound to follow Kansas Supreme Court precedent, which permits upward durational departures for probation if the district court makes findings of substantial and compelling reasons to justify its departure from the presumptive statutory period.

Whether a sentence is illegal is a question of law over which appellate courts have unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). To the extent that this issue requires statutory interpretation, that is also a question of law over which we have unlimited review. *State v. Bryant*, 310 Kan. 920, 921, 453 P.3d 279 (2019). And whether an issue is preserved for appellate review is a question of law with an unlimited standard of review. See *State v. Campbell*, 308 Kan. 763, 770, 423 P.3d 539 (2018).

As for whether McCain's illegal sentence claim is properly before this court, although a "court may correct an illegal sentence at any time while the defendant is serving such sentence" under K.S.A. 2021 Supp. 22-3504, the illegal sentence statute has limited applicability. See *State v. Alford*, 308 Kan. 1336, 1338, 429 P.3d 197 (2018). Our Supreme Court has defined an "illegal sentence" under K.S.A. 2021 Supp. 22-3504 as

> "(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. [Citation omitted.]" *State v. Gilbert*, 299 Kan. 797, 801, 326 P.3d 1060 (2014).

While McCain does not identify which of the three options apply here, she argues her sentence was illegal because it does not conform to the applicable provisions of K.S.A. 2018 Supp. 21-6608. Thus, we may appropriately consider her statutory illegal

5

sentence claim under the second option identified in K.S.A. 2021 Supp. 22-3504(c)(1), as a sentence not conforming to the applicable statute.

The State is correct that issues not raised before the district court generally cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). McCain concedes that she did not challenge her probation sentence below but contends this court may reach her claim because she is now serving an illegal sentence, which can be corrected at any time while she is serving the illegal sentence under K.S.A. 2021 Supp. 22-3504. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019) ("[C]ertain issues, such as subject matter jurisdiction or an illegal sentence, can be raised at any time regardless of whether the issue was presented to the district court.").

McCain also recognizes that under her plea agreement, she "'waive[d] any challenge to an extended period of probation of 60 months pursuant to K.S.A. 21-6608,'" but argues her waiver does not preclude us from reaching this issue because defendants cannot agree to an illegal sentence under Kansas law. See *State v. Hankins*, 304 Kan. 226, 231, 372 P.3d 1124 (2016). Again, we agree it is well-established that an illegal sentence may be corrected at any time while the defendant is serving the illegal sentence under K.S.A. 2021 Supp. 22-3504. See *Johnson*, 309 Kan. at 995.

The State's preservation argument on McCain's statutory claim is also unsupported given that the State concedes, and we agree, that K.S.A. 2018 Supp. 21-6608(c)(5) is inapplicable to extend McCain's probation under the severity level of her crime of conviction.

*The District Court Made an Error of Law in Relying on K.S.A. 2018 Supp. 21-6608(c)(5) for Authority to Extend McCain's Probation.*

We first address McCain's claim of statutory error. McCain was convicted of felony theft under K.S.A. 2018 Supp. 21-5801(a)(1), (b)(2), which the parties agree is a severity level 7 crime. As provided in K.S.A. 2018 Supp. 21-6608(c)(1)(B), the "recommended duration of probation" for a severity level 7 felony is 24 months.

Although it is less than clear on which subsection the district court relied to extend McCain's probation term beyond the 24-month presumption, it seems the district court relied on K.S.A. 2018 Supp. 21-6608(c)(5). But only the journal entry of judgment identifies K.S.A. 2018 Supp. 21-6608(c)(5) specifically as the authority for extending McCain's probation. The terms of McCain's plea agreement stated that the parties would recommend McCain's probation be extended under K.S.A. 2018 Supp. 21-6608 and *State v. Vap*, No. 111,798, 2015 WL 4716309 (Kan. App. 2015) (unpublished opinion):

> "The parties will further recommend the Defendant be placed on an extended period of probation of 60 months *pursuant to K.S.A.* [*2018 Supp.*] *21-6608* to allow Defendant time to make a full restitution. Defendant agrees and waives any challenge to an extended period of probation of 60 months pursuant to K.S.A. [2018 Supp.] 21-6608 to allow Defendant time to make full restitution. See *State v. Vap*, No. 111,798, 2015 WL 4716309 (Kan. App. 2015) (unpublished opinion), allowing for extended probation up to 60 months to pay off restitution." (Emphasis added.)

At the plea hearing, the parties did not specify under which statutory subsection they were seeking to extend McCain's probation term, but the State informed the district court: "Both parties will recommend the defendant be placed on an extended period of probation of 60 months, *pursuant to statute*, to allow defendant time to make full restitution. And the defendant agrees and waives any challenges to an extended period of probation of 60 months." (Emphasis added.)

The parties did not clarify under which subsection probation was being extended during the sentencing hearing, either. At sentencing, the district judge stated it would follow the extended term under the plea agreement, but seemed to speculate that the extended term could later be invalidated:

"This is a presumptive probation case under the applicable criminal history and severity level. I'll follow the presumption, place the defendant on probation for a term of 60 months, as agreed to in the plea agreement.

"I will make findings, as required that the probationary statutory period is extended beyond the statute, first due to the agreement of the parties, and second of all, that the welfare of the defendant would not be served by a statutory length of probation, and that it's highly unlikely that restitution could be rapid within the statutory probationary period.

"I'm also going to make a secondary determination that in the event the 60-month probationary period was found to be not appropriately made, that the defendant would be placed on a 24-month probation with likely extension of that probation, as required, in the event restitution is not paid in full."

Only the written journal entry of judgment specifically stated that McCain's probation period was extended to 60 months "under K.S.A. 21-6608(c)(5)."

The State seems to concede that the extension of McCain's probation under K.S.A. 2018 Supp. 21-6608(c)(5) would have created an illegal sentence. In the State's brief on appeal, it notes: "As an initial matter, the State acknowledges that K.S.A. 21-6608(c)(5) and *Vap* only apply to crimes designated severity level 8, 9, or 10. Thus, they are inapplicable to defendant's severity level 7 crime in the instant case."

Despite this concession, the State argues the district court still had the authority to extend McCain's probation beyond the presumptive term under *State v. Hambright*, 310 Kan. 408, 477 P.3d 972 (2019) (*Hambright II*), and *State v. Whitesell*, 270 Kan. 259, 13 P.3d 887 (2000). But as explained below, these cases authorize probation extensions

8

under a different statute—K.S.A. 2021 Supp. 21-6815(a) (formerly codified as K.S.A. 21-4716)—and the district court did not rely on this statute for authority to extend McCain's probation. Under K.S.A. 2021 Supp. 21-6815(a):

> "Except as provided in subsection (b), the sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

In *Whitesell*, the defendant was placed on 60 months' probation instead of the presumptive 24 months. On review to our Supreme Court, the *Whitesell* court held the increased term was a departure sentence that required the trial court "to state for the record the substantial and compelling reasons for the departure at the time of sentencing" under K.S.A. 1999 Supp. 21-4716 (now codified as amended at K.S.A. 2021 Supp. 21-6815). 270 Kan. at 294. The sentencing court in *Whitesell* did not state its reasons for departure on the record, ultimately requiring the *Whitesell* court to vacate his sentence and remand for resentencing. 270 Kan. at 294.

In *Hambright II*, the defendant entered into a plea agreement in which he pled guilty to felony criminal damage to property, a severity level 7 felony. At sentencing, the district court ordered an extended 36-month probation term after finding that the welfare of Hambright or the public would not be served by the 24-month statutory term. Notably, the facts in *Hambright II* are similar to this case. Like McCain, the journal entry in *Hambright II* was the only instance where the sentencing court specified that it was relying on K.S.A. 2018 Supp. 21-6608(c)(5) for authority to extend the probation period beyond the presumption. 310 Kan. at 411; *State v. Hambright*, 53 Kan. App. 2d 355, 356, 388 P.3d 613 (2017) (*Hambright I*). And like our present matter, the sentencing judge's soliloquy in *Hambright II* used the particularized language included within K.S.A. 2018

9

Supp. 21-6608(c)(5), but the district court did not pronounce that specific subsection from the bench. *Hambright II*, 310 Kan. at 411-12.

Although a panel of our court found K.S.A. 2018 Supp. 21-6608(c)(5) did not authorize the sentence, it found Hambright's probation was still legal because it was not a departure sentence. *Hambright I*, 53 Kan. App. 2d at 358. In reaching this result, the *Hambright I* panel recognized that *Whitesell* applied departure sentencing procedures to an increased probation term, but the panel declared that *Whitesell* no longer controlled because of changes in the law. *Hambright I*, 53 Kan. App. 2d at 360-63. The Kansas Supreme Court granted Hambright's petition for review solely on the panel's holding that the sentencing judge had discretion to sentence Hambright to any term of probation from 24 months to 60 months without the need to make any findings and that such a sentence is not a departure. See *Hambright II*, 310 Kan. at 410.

Ultimately our Supreme Court in *Hambright II* agreed that the district court's reliance on K.S.A. 2018 Supp. 21-6608(c)(5) for authority to extend Hambright's term of probation, as stated in the journal entry, was erroneous. 310 Kan. at 411. Even so, the *Hambright II* court disapproved of the Court of Appeal's departure from *Whitesell*. *Hambright II*, 310 Kan. at 420. The Kansas Supreme Court reversed the Court of Appeal's decision to overrule *Whitesell* and affirm Hambright's extended probation term. As a remedy, our Supreme Court remanded the matter to the district court "for resentencing on the duration of probation under the correct legal standard." *Hambright II*, 310 Kan. at 420.

In sum, *Whitesell* found sentencing courts can impose extended probation terms as upward departure sentences under K.S.A. 2018 Supp. 21-6815 (formerly K.S.A. 21-4716) if the sentencing court states substantial and compelling reasons for a departure on the record. *Whitesell*, 270 Kan. at 292-94. The *Hambright II* court affirmed the *Whitesell* holding, while also clarifying the remedy for correcting an illegal probation sentence

10

extended based on the district court's erroneous reliance on K.S.A. 2018 Supp. 21-6608(c)(5). *Hambright II*, 310 Kan. at 420.

Our Supreme Court's decision in *Hambright II* provides clear direction. The district court's legal error—extending McCain's period of probation by relying on K.S.A. 2018 Supp. 21-6608(c)(5)—requires a remedy under the *Hambright II* guidance. Upon finding the defendant's probation was illegally extended in *Hambright II,* the Kansas Supreme Court remanded to the district court "for resentencing on the duration of probation under the correct legal standard." 310 Kan. at 420.

Recently, in *State v. Nelson*, No. 123,215, 2022 WL 128861, at *3 (Kan. App. 2022) (unpublished opinion), a panel of this court relied on *Hambright II* to find the district court made a similar error of law in relying on K.S.A. 2020 Supp. 21-6608(c)(5) for authority to extend probation based on a severity level 7 crime of conviction. Notably, both *Hambright II* and *Nelson* refused to consider whether the district court stated substantial and compelling reasons for a departure under K.S.A. 2020 Supp. 21-6815 and *Whitesell*. Instead, both courts vacated the probation sentence and remanded for sentencing "under the correct legal standard." *Hambright II*, 310 Kan. at 420; *Nelson*, 2022 WL 128861, at *4.

The sentencing court in *Nelson* clearly relied on K.S.A. 2020 Supp. 21-6608(c)(5) for authority to extend the defendant's probation term, compared to the sentencing court in *Hambright II* and in this case. In *Hambright II*, the journal entry and the district court's particularized language showed the district court's reliance on K.S.A. 2018 Supp. 21-6608(c)(5). As detailed, the record here shows the parties repeatedly relied on K.S.A. 2018 Supp. 21-6608, generally, to authorize the extension of McCain's probation beyond the statutory presumption. But the district court also used the particularized language of K.S.A. 2018 Supp. 21-6608(c)(5) when it ordered probation from the bench. And as the *Hambright II* court briefly noted, the journal entry may have clarified the application of

11

K.S.A. 2018 Supp. 21-6608(c)(5). See *State v. Garcia*, 288 Kan. 761, 766, 207 P.3d 251 (2009).

Despite the State's argument, nothing in the record shows the district court here relied on K.S.A. 2018 Supp. 21-6815 and *Whitesell*, rather than K.S.A. 2018 Supp. 21-6608(c)(5), for authority to extend McCain's probation beyond the statutory presumption. K.S.A. 2018 Supp. 21-6815 was not identified in any filings—unlike the parties repeatedly identifying K.S.A. 2018 Supp. 21-6608—and the district court's pronouncement from the bench did not state "substantial and compelling reasons" on the record for support for departure under K.S.A. 2018 Supp. 21-6815(a). See *Hambright II*, 310 Kan. 408, Syl. Rather, the district court—and the parties—relied on K.S.A. 2018 Supp. 21-6608 for authority by citing that statute and using that statute's particularized language.

Thus, while the district court may have been able to support its departure from the presumptive probation period with substantial and compelling reasons under K.S.A. 2018 Supp. 21-6815(a), as the State attempts to argue, this was not the standard the district court relied on to authorize McCain's probation extension. Rather, the district court relied on K.S.A. 2018 Supp. 21-6608, which was an error of law. See *Hambright II*, 310 Kan. at 420; *Nelson*, 2022 WL 128861, at *4.

As noted, the remedy under *Hambright II* and *Nelson* was to vacate the sentence of probation and remand for resentencing under the correct legal standard. See *Hambright II*, 310 Kan. at 420; *Nelson*, 2022 WL 128861, at *4. But the district court here, seeming to predict its own error, attempted to cure its potential mistake by making a secondary ruling that it intended to become effective only if the 60-month extended probation period was invalidated.

*The District Court's Secondary Ruling to Impose the Presumptive Probation Term, in the Alternative, is Unenforceable.*

In its alternative ruling, the district judge found:

"I'm also going to make a secondary determination that in the event the 60-month probationary period [is] found to be not appropriately made, that the defendant would be placed on a 24-month probation with likely extension of that probation, as required, in the event restitution is not paid in full. So I'll order the 60-month probation period as agreed, but I'm going to make a secondary order that it's a 24-month probation, subject to extension, in the event it was found not to be appropriate to place her on the 60 months."

This secondary ruling by the district court is unenforceable because our Supreme Court has held that the district court loses jurisdiction to change a sentence once a sentence is pronounced. See *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014) ("[A] criminal sentence is effective upon pronouncement from the bench, and a trial court lacks jurisdiction to modify the sentence thereafter."). So, once the district court announced the 60-month term of probation, it lost jurisdiction to go back and modify its sentence if the original sentence was vacated.

*McCain's Constitutional Challenge to her Probation Sentence Fails.*

McCain secondarily argues the district court violated her constitutional rights when it extended her probation as an upward departure because the district court neither informed McCain she had a right to have a jury determine the upward departure factors, nor secured a valid waiver of such jury right.

But McCain's constitutional challenge is improper for two reasons. First, because the definition of an illegal sentence does not encompass violations of constitutional provisions, a defendant may not challenge a sentence on constitutional grounds under K.S.A. 2021 Supp. 22-3504. *State v. Lee*, 304 Kan. 416, 418, 372 P.3d 415 (2016).

13

Second, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

And because we have provided McCain with relief on her statutory claim, we need not reach her constitutional challenge. For example, the defendant in *Nelson* made the same constitutional claim, but the panel refused to consider it because the panel provided the defendant a valid alternative ground for relief. The *Nelson* panel held:

> "Given our holding predicated on a statutory error, we decline to address Nelson's argument regarding a claimed constitutional error. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003) ('[W]here there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges to statutes.')." *Nelson*, 2022 WL 128861, at *4.

Likewise, we decline to address McCain's constitutional challenge.

*The KSGA Does Not Violate Section 5 of the Kansas Constitution Bill of Rights.*

Next, McCain argues the district court violated her jury trial rights under section 5 of the Kansas Constitution Bill of Rights when it considered her prior conviction to determine her criminal history score for sentencing. She contends the KSGA violates section 5 of the Kansas Constitution Bill of Rights because it permits judicial fact-finding of prior convictions without first requiring the State to prove those convictions to a jury beyond a reasonable doubt. In response, the State argues McCain did not preserve this claim for appellate review, "and it is otherwise meritless."

A constitutional challenge to the KSGA involves a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

14

McCain's claim based on the Kansas Constitution Bill of Rights is that section 5 reserves the jury trial right as it historically existed at common law when the state's constitution came into existence. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019). Relying on cases cited by Justice Clarence Thomas in his *Apprendi* concurrence, McCain argues there was an American common-law right to a jury trial on penalty-enhancing prior convictions that predates Kansas statehood. *Apprendi*, 530 U.S. at 501-09 (Thomas, J., concurring). And because the KSGA relies on judicial findings of prior convictions to determine presumptive sentences, McCain concludes that the KSGA violates the common-law right to a jury trial provided in section 5.

After the parties submitted their briefs in this case, our Supreme Court considered and rejected an identical argument in *State v. Albano*, 313 Kan. 638, Syl. ¶ 4, 487 P.3d 750 (2021):

> "Section 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.; no authority substantiates that defendants had such a jury trial right at common law when our state Constitution was adopted."

We, then, are duty-bound to follow Kansas Supreme Court precedent, and *Albano* resolves this issue. The KSGA does not violate section 5 of the Kansas Constitution Bill of Rights.

*The District Court Did Not Impose an Unworkable Restitution Plan.*

Next, McCain argues the district court abused its discretion in ordering her to pay $500 per month in restitution because the plan is unworkable. The State argues the panel should not consider McCain's challenge because she did not preserve it for appellate

15

review. Alternatively, the State contends the record supports the district court's restitution plan.

Appellate courts review whether a plan of restitution would be unworkable for an abuse of discretion. Judicial discretion is abused only when no reasonable person would agree with the decision of the district court or if the decision is based on an error of law or of fact. But to the extent that this question requires the panel to interpret the restitution statute, review is unlimited. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018).

K.S.A. 2021 Supp. 21-6604(b)(1) provides that a district court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime. Restitution is due immediately unless: . . . (B) the court finds compelling circumstances that would render [a plan of] restitution unworkable . . . ." The Kansas Supreme Court has held "'restitution is the rule and a finding that restitution is unworkable the exception'" under the statute. *Meeks*, 307 Kan. at 816-17 (quoting *State v. Goeller*, 276 Kan. 578, 583, 77 P.3d 1272 [2003]). The burden is on the defendant to present evidence of "'compelling circumstances'" to prove a restitution plan is unworkable. *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015).

McCain concedes that she did not object to the plan as unworkable at the district court. Despite failing to preserve this issue by objecting to the plan below, McCain argues the panel should consider her claim because it meets two of the exceptions to the rule against raising new issues for the first time on appeal. See *Kelly*, 298 Kan. at 971 (holding issues not raised before the district court generally cannot be raised on appeal).

There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent

16

denial of fundamental rights; and (3) the district court was right for the wrong reason. *Johnson*, 309 Kan. at 995.

McCain argues her claim meets the first and second exceptions. As both parties point out, panels of this court have considered this issue under the first exception. See *Hambright I*, 53 Kan. App. 2d at 365 (finding review of the unpreserved workability issue was "clearly appropriate" under the first exception).

But our Supreme Court has found to the contrary. In *State v. King*, 288 Kan. 333, 356, 204 P.3d 585 (2009), the defendant did not challenge unworkability of the restitution plan "at all" at the district court. 288 Kan. at 356. Our Supreme Court held:

> "Not only would this lack of objection fail to preserve the issue for appellate review in the normal case, but it also fails to meet his burden of proving unworkability. Thus, the district court did not abuse its discretion when it ordered restitution in this case." 288 Kan. at 356.

In *State v. Shank*, 304 Kan. 89, 94-95, 369 P.3d 322 (2016), our Supreme Court relied on its holding in *King* to reach the same result. In *Shank*, defense counsel informed the district court that there was no "'objection to the restitution as listed.'" 304 Kan. at 94. The *Shank* court held:

> "As with the defendant in *King*, Shank's overall failure to object to the proposed restitution obviously includes a failure to raise any specific argument about the restitution plan's unworkability. And as in *King*, this would represent not only a failure to preserve the issue for our review in the normal case but also constitute a failure to meet his burden of proving unworkability. [Citation omitted.]" *Shank*, 304 Kan. at 94.

The *Shank* court then found the district court did not abuse its discretion when it ordered restitution because it was the defendant's responsibility—not the district court's—

17

to challenge the workability of the restitution plan. 304 Kan. at 95. "And the defendant—not the court—carries the burden to come forward with evidence of compelling circumstances that render the restitution plan unworkable. Despite these burdens, Shank did not challenge the restitution plan, much less provide any compelling circumstances to support such a challenge. [Citation omitted.]" 304 Kan. at 95.

Like defendants in *Shank* and *King*, McCain did not object to the district court's order of restitution. And like those defendants, McCain's failure to object to the district court's proposed restitution order also equates to a failure to object to the restitution plan's unworkability.

McCain's argument on appeal also does not support her challenge under *Shank* and *King* because she mischaracterizes her burden of proving the restitution plan is unworkable. McCain acknowledges the standard that places the burden on her to provide evidence of compelling reasons that would render a restitution plan unworkable. But even so, she argues the district court's factual findings were not supported by substantial competent evidence.

But like the defendant in *Shank*, McCain's argument is not persuasive because she did not come forward with evidence of compelling circumstances. Rather, McCain argues the evidence presented at sentencing did not support the district court's factual findings, which rendered the district court's action an abuse of discretion. And as our Supreme Court has held, McCain's argument is not convincing because she carries the burden of objecting to the restitution plan and providing evidence of her claims of unworkability.

But despite these burdens, McCain did not challenge the restitution plan, much less provide any compelling circumstances to support such a challenge. Although McCain noted her unemployment at the time of the restitution hearing and mentioned her dependent, the district court took her current unemployment and recovery time from her

18

upcoming surgery into consideration. The district court provided McCain two months to become employed and imposed on her a lesser monthly payment than would be suggested by an equal division of the restitution amount into monthly payments the length of her probation. Even without specifically citing them, the district court considered the factors suggested by McCain in her appellate brief: her income, her future earning capacity, her living expenses (which were minimal at that time), and acknowledged her child. See *Meeks*, 307 Kan. at 820.

Again, it is ultimately McCain's burden to come forward with evidence of compelling circumstances that render the restitution plan unworkable. *King*, 288 Kan. at 356. And she failed to present any evidence for her alleged claims of unworkability. As a result, not only did McCain's lack of objection fail to preserve the issue for appellate review, but it also fails to meet her burden of proving unworkability. Thus, the district court did not abuse its discretion when it ordered restitution in this case. See *King*, 288 Kan. at 356.

*The Kansas Criminal Restitution Scheme is Not Unconstitutional.*

In her final issues on appeal, McCain challenges the Kansas criminal restitution statutes as unconstitutional. She contends Kansas' restitution statutes violate section 5 of the Kansas Constitution Bill of Rights because they encroach upon a criminal defendant's common law right to a civil jury trial on damages caused by the defendant's crime. And McCain argues that Kansas' restitution statutes violate her federal Sixth Amendment jury trial right because the statutes allow the court to make a finding of fact that increased the penalty for her crime beyond the prescribed statutory maximum. See *Apprendi*, 530 U.S. at 490.

McCain concedes to raising both issues for the for the first time on appeal. See *Daniel*, 307 Kan. at 430 (finding constitutional grounds for reversal asserted for the first

19

time on appeal are not properly before the appellate court for review). Even so, she contends her claim meets two of the exceptions to the rule against raising constitutional grounds for the first time on appeal.

Recently, our Supreme Court agreed to consider these identical claims despite the defendant raising the issues for the first time on appeal. See *State v. Arnett*, 314 Kan. 183, 185, 496 P.3d 928 (2021); *State v. Robison*, 314 Kan. 245, 247-48, 496 P.3d 892 (2021). But in reaching the issues, the *Arnett* and *Robison* courts noted that "'"[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, [this court has] no obligation to do so." [Citations omitted.]'" *Arnett*, 314 Kan. at 185 (quoting *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 [2020]); *Robison*, 314 Kan. at 248.

But even if this court may reach McCain's unpreserved claims, both of her claims fail under *Arnett* and *Robison*.

In these cases, the Kansas Supreme Court addressed arguments identical to McCain's claims here and found the current Kansas criminal restitution statutes do not trigger Sixth Amendment protections as contemplated by *Apprendi* and its progeny. *Arnett*, 314 Kan. at 186-88; *Robison*, 314 Kan. at 249-50.

Meanwhile, our Supreme Court has found the present restitution statutory scheme violates section 5 of the Kansas Constitution by converting restitution orders into civil judgment—effectively bypassing the traditional function of juries to determine civil damages. *Arnett*, 314 Kan. at 189-94. The *Arnett* court concluded the proper remedy was to sever the problematic portions of the Kansas criminal restitution statutes which were found to be "virtually identical to a civil judgment." 314 Kan. 183, Syl. ¶¶ 3, 5. The *Arnett* court concluded:

"[R]estitution may still be imposed by a judge either as part of the sentence—as contemplated by K.S.A. 2020 Supp. 21-6604(b)—or as a condition of probation—as contemplated by K.S.A. 2020 Supp. 21-6607(c)(2).

"However, a criminal defendant will not be faced with a civil judgment for restitution unless it has been obtained separately through a civil cause of action. In this way, criminal restitution is—once again—not a legal obligation equivalent to a civil judgment and does not violate section 5." 314 Kan. at 196.

Here, McCain improperly asks the panel to vacate her restitution order as it relates to her former employer, King of Freight. But the *Arnett* and *Robison* courts refused to vacate an award if it was imposed by a judge as part of a sentence under K.S.A. 2021 Supp. 21-6604(b), or as a condition of probation under K.S.A. 2021 Supp. 21-6607(c)(2). McCain's journal entry of sentencing reveals her restitution was imposed by the district court as a condition of probation: "In addition to the provisions set forth in K.S.A. 21-6607, the defendant is ordered to comply with the following *special conditions of probation*: . . . . Pay fees/fines/costs/restitution at a minimum $500.00 per month beginning August, 2020." (Emphasis added.)

Thus, although Kansas restitution statues implicate section 5 of the Kansas Constitution Bill of Rights, the severance of the unconstitutional provisions render McCain's restitution judgment constitutionally valid. *Arnett*, 314 Kan. at 194-96; *State v. Owens*, 314 Kan. 210, 242-44, 496 P.3d 902 (2021).

This court is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *Rodriguez*, 305 Kan. at 1144. There is no reason to suggest such a departure from this precedent considering the recency of the Kansas Supreme Court's decisions on these issues. See *State v. Holley*, 315 Kan. 512, 525, 509 P.3d 542 (2022) ("*Arnett* dictates that [the defendant] cannot face a civil judgment for restitution unless it is obtained through a

separate, civil cause of action, and forecloses [the] claim that this court must vacate the restitution order."). As a result, McCain's constitutional claims fail.

The district court's imposition of restitution is affirmed, probation is vacated, and the case is remanded for resentencing under the correct legal standard.